AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

**FILED**

MAY – 7 2019

CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY_____
DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>SPRINT cellular telephone 214-418-2574, with IMSI:<br>310120059494450. | )<br>)<br>)<br>)<br>)<br>) |

Case No. M-19- 233 -P

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 18 U.S.C. § 2118(b) | Burglary Of a Business Registered with the Drug Enforcement Administration |

The application is based on these facts:

See Affidavit, attached hereto

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

GERARD DAUPHINAIS, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/7/19

City and state:  Oklahoma City, Oklahoma

_____
*Judge's signature*

GARY M. PURCHELL, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## <u>PROPERTY TO BE SEARCHED</u>

This warrant applies to records and information associated with the cellular telephone assigned call number **214-418-2574**, with **IMSI:310120059494450** (the **SUBJECT PHONE**), which is stored at premises controlled by **SPRINT**, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.



## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### I.    Information to be Disclosed by the Provider

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in **Attachment A** for the time period **October 25, 2017 through November 1, 2017**:

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity



Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 18 § U.S.C. 2118(b); and 18 § U.S.C. 2 involving **MONSERRATE** during the period **October 25, 2017 through November 1, 2017.**



Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant

4



## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **214-418-2574**, WITH **IMSI: 310120059494450**, THAT IS STORED AT PREMISES CONTROLLED BY **SPRINT**. | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Gerard Dauphinais, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **214-418-2574**, with **IMSI: 310120059494450** ("the **SUBJECT PHONE**"), which is stored at premises controlled by **SPRINT**, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.  The **SUBJECT PHONE** is subscribed to by Julian Stachniewicz, 8217 County Road #106, Grandview, Texas, but utilized by Danielle **MONSERRATE**.  I believe **MONSERRATE** is utilizing the **SUBJECT PHONE** because an indices check of **MONSERRATE** lists the **SUBJECT PHONE** as her cellular telephone as well as associating her with the same subscriber address as the **SUBJECT PHONE**.  In addition, on multiple occasions in the last two years, **MONSERRATE** has given the **SUBJECT PHONE** as her contact telephone to law enforcement.  The information to be searched is described in the following paragraphs and in **Attachment A**.  This affidavit

is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **SPRINT** to disclose to the government copies of the information further described in Section I of **Attachment B**.  Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review the information to locate items described in Section II of **Attachment B**.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have served in that capacity since 1996.  I am currently assigned to the Tactical Diversion Squad (TDS) at the Oklahoma City District Office (OCDO) located in Oklahoma City, Oklahoma.  In January 1997, I completed approximately sixteen (16) weeks of training at the DEA Basic Agent Academy in Quantico, Virginia that instructed your affiant on narcotics investigations, use of confidential sources, surveillance, interviews and interrogation, proper search and seizure, and arrest procedures as required to become a Special Agent with the DEA. Prior to the DEA, I was a police officer with the Los Angeles Police Department for two years and have experience investigating many types of criminal conduct.

3.      During my career as a DEA Special Agent, I have investigated violations of the Controlled Substances Act involving illegal narcotics trafficking.  Through these investigations and the training mentioned above, I have become familiar with investigative methods and techniques regarding drug trafficking and money laundering.  I am familiar with and have participated in standard methods of investigation, including, but not limited to, visual surveillance, questioning witnesses, the use of search and arrest

2

warrants, the use of informants, the use of electronic surveillance, the monitoring and analysis of cellular telephone usage and data, and the use of undercover agents. I am familiar with the methods of operation and terminology used by drug traffickers as well as methods of laundering drug trafficking proceeds. I have experience debriefing defendants, witnesses, confidential sources, and other persons who have knowledge of the distribution and transportation of controlled substances. I know from training, experience, and experiences related to me by other agents that persons involved in drug trafficking frequently utilize cellular telephones to further the distribution of illicit and/or counterfeit illicit substances.

4.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. As a Special Agent with the DEA, I am vested with the authority to investigate violations of Titles 21 and 18 of the United States Code. The facts contained in this affidavit were discovered by me or related to me by other Law Enforcement Officers.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 18 § U.S.C. 2118(b); and 18 § U.S.C. 2 have been committed, are being committed, and will be committed by **Danielle MONSERRATE**.   There is also probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband, or fruits of these crimes as further described in **Attachment B**.

3

## **PROBABLE CAUSE**

6.      On February 19, 2019, Danielle **MONSERRATE** and Jeremy BALLEW were indicted in the Western District of Oklahoma for violations of Title 21, U.S.C. § 846 (Drug Conspiracy) and Title 21, U.S.C. § 841(a)(1) (Possession with Intent to Distribute Hydrocodone) for their involvement in the burglary of the Nichols Hills Drugs pharmacy located at 7538 Berkley Avenue, Oklahoma City, Oklahoma, on December 3, 2017.    During that burglary, over 3,000 Schedule II Controlled Substances were taken. On December 9, 2017, pursuant to his arrest for possession of a controlled substance by the Phelps County Sheriff's Department (Missouri), BALLEW admitted to committing the Nichols Hills Drug burglary and stated that **MONSERRATE** (who was with BALLEW when he was arrested by Phelps County Sheriffs) acted as the lookout by sitting in a vehicle outside the pharmacy while BALLEW entered the location and stole the controlled substances.

7.      On March 19, 2019, the Federal Grand Jury of the Western District of Oklahoma issued a superseding indictment against **MONSERRATE** and BALLEW charging both of them with violations of Title 21, U.S.C. § 846 (Drug Conspiracy); Title 21, U.S.C. § 841(a)(1) (Possession with Intent to Distribute Hydrocodone); and Title 18, U.S.C. § 2118(b) (Burglary Involving Controlled Substances).

8.      On March 16, 2019, pursuant to an arrest warrant issued against her by the federal indictment on February 19, 2019, **MONSERRATE** was arrested in Alvarado, Texas during a traffic stop by the Alvarado Police Department (APD).   During a search

of **MONSERRATE**'s vehicle pursuant to her arrest, APD officers seized three exhibits of a white, crystallized substance that all field-tested positive for the presence of methamphetamine, as well as three cellular telephones that **MONSERRATE** had in her possession at the time of her arrest. On March 20, 2019, I took possession of the three cellular telephones and processed them as evidence in this investigation.

9.     On April 3, 2019, the Honorable Shon T. Erwin, U.S. Magistrate Judge, Western District of Oklahoma, signed Federal Search Warrants authorizing the search of the three cellular phones seized from **MONSERRATE** as detailed above. One of the telephones seized was identified as the **SUBJECT PHONE** which is believed to have been used by **MONSERRATE** during the Nichols Hills Drugs Pharmacy.

10.     I believe **MONSERRATE** and BALLEW were involved in at least two additional pharmacy burglaries in the state of Kansas, between the dates of October 28-29, 2017. I also believe **MONSERRATE** was utilizing the **SUBJECT PHONE** during the above dates while in the commission of the pharmacy burglaries with BALLEW. The facts supporting this belief are presented below.

11.     During the week of April 15, 2019, while effecting the search warrant on the **SUBJECT PHONE**, I observed several pictures on the **SUBJECT PHONE** that contained numerous prescription bottles of various controlled substances that are typically only found in pharmacies. The bottles looked unopened and appeared to be the manner that the bottles would be shipped to pharmacies from the drug manufacturers and not bottles that would be typically issued to people containing a legal prescription. Some

5

of the pictures showed the bottles lined up on a table, while others were pictures of the pills in baggies as if they were being prepared to distribute illegally. One particular picture showed a large, black garbage bag (such as a lawn debris bag) filled to the top with bottle and bottles of pills as if they were just shoved into the bag quickly and is not the typical way to transport prescription bottles or bottles of any type. The pictures were "captured" (iPhone terminology for the date they were taken) between the dates of October 27, 2017 and November 6, 2017. In addition, the pictures were taken with location services enabled on the **SUBJECT PHONE** which gave the latitude and longitude readings where the **SUBJECT PHONE** (believed to be possessed and used by **MONSERRATE** during this time frame) was being utilized at the time the pictures were taken.

12.     One of the pictures had a latitude/longitude reading that indicated it was taken while the **SUBJECT PHONE** was located at or around 2340 N. Greenwich Rd, Wichita, Kansas. The picture was taken on October 29, 2017, at approximately 9:44 p.m. That location is the Holiday Inn Express & Suites Wichita Northeast. A check of hotel records confirm that **MONSERRATE** rented a room at that hotel on October 29, 2017 for one night. **MONSERRATE** listed the same address as that of the **SUBJECT PHONE** as her home address and the **SUBJECT PHONE** as her contact telephone. A check of any pharmacy burglaries reported between October 28 and October 29, 2017 revealed Dandurand Drugs located at 800 Carriage Parkway, Wichita, Kansas submitted a "Report of Theft or Loss of Controlled Substances" to the DEA to document the

6

inventory taken during the burglary on October 29, 2017 of their pharmacy.  In that burglary, over 3,100 Hydrocodone pills and over 400 Adderall pills were taken. Hydrocodone and Adderall are both Schedule II Controlled Substances according to the Controlled Substances Act of 1970.   The Holiday Express Inn & Suites where **MONSERRATE** was registered as a guest on the night of the burglary is approximately 5.5 miles west of the location of the burglary, Dandurand Drugs.

13.     Two of the pictures had a latitude/longitude reading that indicated they were taken while the **SUBJECT PHONE** was located at 212 E. 23rd Street, Ottawa, Kansas.  The pictures were taken on October 29, 2017, at approximately 1:35 a.m. and 1:37 a.m. respectfully.  That location is the SureStay Hotel by Best Western Ottawa.  A check of hotel records confirm that **MONSERRATE** rented a room at that hotel on October 28, 2017 for one night.  A check of any pharmacy burglaries reported between October 28 and October 29, 2017 revealed Sigler Pharmacy located at 4525 West 6th Street, Lawrence, Kansas submitted a "Report of Theft or Loss of Controlled Substances" to the DEA to document the inventory taken during the burglary of their pharmacy on October 29, 2017.  In that burglary, over 9,000 Schedule II controlled substances (to include Oxycodone and Adderall) were taken.   The SureStay Hotel where **MONSERRATE** was registered as a guest on the night of the burglary is approximately 32 miles south of the location of the burglary, Sigler Pharmacy.

14.     Another picture on the **SUBJECT PHONE** was of a male (believed to be BALLEW) sitting at a table with a large number of loose pills and plastic baggies as if he

7

is filling the baggies with pills to prepare them to be illegally distributed.  On the table next to the male is a set of keys for a rental car.  In the picture, you can clearly see the VIN number of the vehicle on the key tag.  A vehicle check of that VIN revealed it to be an EAN Holdings rental vehicle.  EAN Holdings is the parent company for Enterprise, Alamo, and National Rental Car companies.  Further research into this VIN revealed that this vehicle was a white 2018 GMC SUV and had been rented by **MONSERRATE** from October 26, 2017 to November 20, 2017.  In addition, video obtained by the Lawrence Police Department on the night of the Sigler Pharmacy burglary (October 29, 2017 and referenced in paragraph 13), show a white GMC SUV matching the description, make and model of the vehicle **MONSERRATE** rented, circling the area approximately two blocks from the burglary at Sigler Pharmacy between midnight and 12:07 a.m. (approximately 90 minutes before the pictures were taken on the **SUBJECT PHONE**).

15.     Further analysis of the **SUBJECT PHONE** revealed several text messages between **MONSERRATE,** using the **SUBJECT PHONE,** and "Kevin", the user of telephone number 682-206-4238 ("Kevin" is believed to be Kevin Patterson, an ex-boyfriend of **MONSERRATE**).  On October 27, 2017, at approximately 5:29 p.m., **MONSERRATE** sent two pictures of the white GMC SUV that she had rented to "Kevin".  On October 28, 2017, at approximately 1:27 p.m., **MONSERRATE** texted "Kevin", "I can't wait to get home."  On the same date, at approximately 5:48 p.m., **MONSERRATE** texted "Kevin", "We are jus waiting on dark now."  On October 29, 2017, at approximately 1:35 a.m. and 1:37 a.m., **MONSERRATE** texted "Kevin" the

8

two pictures of bottles of pills referenced in paragraphs 11 and 13.  On the same date, at approximately 1:51 a.m., "Kevin" texted **MONSERRATE**, "That a lot."  Between approximately 1:58 a.m. and 2:15 a.m., **MONSERRATE** texted "Kevin" the following: "No dones", "Tons of Oxys", "I've never seen that many", and "Jus harder to sell."  On the same date, at approximately 11:13 a.m., **MONSERRATE** texted "Kevin", "As soon as sunsets we are doing two more and headed home."  At approximately 4:18 p.m., **MONSERRATE** texted "Kevin", "Good we found our two..jus waiting on dark. We are still looking his in case those don't work out."  At approximately 9:35 p.m., **MONSERRATE** texted "Kevin", "I'm let you kno I'm jus a sec what we got."  At approximately 9:44 p.m., **MONSERRATE** texted "Kevin" a picture of bottles of pills referenced in paragraph 11.  At approximately 10:22 p.m., **MONSERRATE** texted "Kevin", "Abt 15k cash on this one."  These text messages are not all of the text messages available but only a sample of text messages that **MONSERRATE** sent using the **SUBJECT PHONE** during the time period identified in **Attachment B.**

16.    I believe the cell-site information to be disclosed by **SPRINT** for the time period identified in **Attachment B** is likely to constitute evidence of the crimes under investigation and indicate that **SPRINT** to whom this warrant is directed provides service for the **SUBJECT PHONE**.  I believe the cell-site information to be disclosed by **SPRINT** for the time period identified in **Attachment B** will confirm that **MONSERRATE** was in the immediate area of where the pharmacy burglaries were committed in Wichita and Ottawa, Kansas, on or about October 29, 2017.

9

17.     In my training and experience, I have learned that **SPRINT** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."   Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.   These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.   Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18.     Based on my training and experience, I know that **SPRINT** can collect cell-site data about the **SUBJECT PHONE**.  I also know that wireless providers such as **SPRINT** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  I personally confirmed with **SPRINT** that it currently possesses the information requested in this order and identified in **Attachment B**.

10

19.     Based on my training and experience, I know that wireless providers such as **SPRINT** typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as **SPRINT** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE's** user or users, their location at the time of the **SUBJECT PHONE's** use or the time of the criminal activity, and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21.     I further request that the Court direct **SPRINT** to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control.  Because the warrant will be served on **SPRINT**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

11

22.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

GERARD DAUPHINAIS
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 7th day of May, 2019

GARY M/ PURCELL
United States Magistrate Judge

12

## ATTACHMENT A

## <u>PROPERTY TO BE SEARCHED</u>

This warrant applies to records and information associated with the cellular telephone assigned call number **214-418-2574**, with **IMSI:310120059494450** (the **SUBJECT PHONE**), which is stored at premises controlled by **SPRINT**, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.



# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### I.    Information to be Disclosed by the Provider

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in **Attachment A** for the time period **October 25, 2017 through November 1, 2017**:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity

Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 18 § U.S.C. 2118(b); and 18 § U.S.C. 2 involving **MONSERRATE** during the period **October 25, 2017 through November 1, 2017.**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant

4

